UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

DR. CLAUDE OSTER,

        Debtor.

_____/

CLARKSTON STATE BANK,                     Case No. 10-12629

                                      Paul D. Borman
          Plaintiff/Appellee,        United States District Judge
v.

                                        Steven W. Rhodes
                                      United States Bankruptcy Judge

DR. CLAUDE OSTER,

        Defendant/Appellant.

_____/

## ORDER AFFIRMING THE BANKRUPTCY COURT'S JUNE 15, 2010, ORDER FINDING DR. OSTER'S DEBT TO CLARKSTON STATE BANK TO BE NONDISCHARGEABLE

      This bankruptcy case is before the Court on Dr. Claude Oster's ("Defendant-Appellant"

or "Debtor") Appeal from the bankruptcy court's June 15, 2010, oral opinion and order finding

that the debt owed by Debtor to Clarkston State Bank ("Plaintiff-Appellee" or "Clarkston") was

nondischargeable.  Debtor's Brief on Appeal was filed on August 18, 2010 (Dkt. No. 8), and

Clarkston's Response Brief was filed on August 30, 2010 (Dkt. No. 10).  Debtor filed a Reply on

September 15, 2010 (Dkt. No. 11).  Clarkston also filed a supplemental brief on January 19,

2011 (Dkt. No. 17), and Debtor filed a supplemental brief on January 21, 2011 (Dkt. No. 21).

1

Oral argument was held on February 1, 2011.

For the reasons stated below, the Court will affirm the bankruptcy court's June 15, 2010, Order.

## I.  BACKGROUND

The facts are summarized in the bankruptcy court's opinion.  (R., Ex. 10 - June 15, 2010 Trial Tr. 116-27).  The Court notes the following facts relevant to this appeal.

Debtor is a 75-year-old physician who suffers from multiple sclerosis.  At issue are a $750,000 loan by Clarkston to Debtor, and a $600,000 loan made by Clarkston to Polyclinc Associates, P.C., an entity controlled by Debtor.

In procuring these loans, Debtor submitted to Clarkston false written statements claiming that he had an ownership interest in between $8 and $9 million in marketable securities. Clarkston, relying on these written statements, made the loans to Debtor, who defaulted. Clarkston won a judgment against Debtor in the Oakland County Circuit Court, and Debtor subsequently filed for bankruptcy.  The bankruptcy court found that Debtor's loans were nondischargeable under 11 U.S.C. § 523(a)(2)(B), because of Debtor's false written statements.

Debtor does not dispute that the written statements were actually false, but instead argues that Clarkston's reliance on these financial statements was unreasonable due to "red flags" contained in the statements and on computer screen printouts of his and his wife's Merrill Lynch accounts.

### A.  The Financial Statements

The financial statements at issue were prepared by Howard Small, who was the long-time personal accountant for Debtor and his wife.  The first statement at issue is entitled "Personal

2

Balance Sheet," and is dated January 31, 2005. (R., Ex. 16 - Personal Balance Sheet). This document shows an "Investment in marketable securities," valued at $8,255,000, as an asset for "Dr. and Mrs. Claude Oster."

Debtor also produced three separate statements, entitled "Statement of Financial Condition," and dated September 30, 2005, August 31, 2006, and March 31, 2007. (R., Exs. 17, 18, and 19 - Financial Statements). These documents – also prepared by Howard Small – show an "Investment in marketable securities" valued between $8,400,000 and $9,373,000, owned in the name of "Dr. and Mrs. Claude Oster." However, unlike the Personal Balance Sheet, these statements contain a footnote stating that the marketable securities are "jointly owned."

**B. Business Loan Agreements**

Debtor signed several Business Loan Agreements for the loans at issue. (R., Exs. 12, 13 and 15 - Loan Agreements). Two documents for the $750,000 loan contain the heading "Financial Covenants and Ratios," and state as follows: "Working Capital Requirements. Maintain Working Capital according to the following: Marketable security balance to be maintained at 4,000,000.00 to be tested quarterly." (R., Exs. 12 and 15). A document for the $600,000 loan states: "Tangible Net Worth Requirements. Maintain a minimum Tangible Net Worth of not less than: $4,000,000.00." (R., Ex. 13). When Debtor had the $750,000 loan term extended from September 24, 2006 to September 24, 2007, he signed a "Change in Terms Agreement," which stated: "LOAN DEFAULT. Bank will have the right to call the note if marketable securities of Dr. Claude Oster falls below $4,000,000.00." (R., Ex. 14 - Change in Terms Agreement). Debtor's signature appears directly above the $4,000,000 figure in this line.

## C. Merrill Lynch Computer Printouts

A series of computer screen printouts have been produced showing various account balances held by Merrill Lynch for the Oster family. (R., Exs. 21-25). The printouts use a shorthand name for the accounts and do not reflect in whose name the accounts are actually held. Several of the shorthand names include "Terry," the name of Debtor's wife; only one account has Debtor's name – "Claude IRA Shares" – and it is valued between $50,000 and $60,000.

## II.  STANDARD OF REVIEW

On appeal to a district court, a bankruptcy court's findings of fact are reversible only if they are clearly erroneous. Bankruptcy Rule 8013; *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993). Conclusions of law, however, are reviewed *de novo*. *In re Batie*, 995 F.2d at 88. "[I]f a question is a mixed question of law and fact, then [the district court] must break it down into its constituent parts and apply the appropriate standard of review for each part." *Id*.

## III.  ANALYSIS

Debtor raises two primary issues on appeal. The Court addresses each of debtor's arguments below.

## A. Reasonable Reliance Under § 523(a)(2)(B)

Where, as here, there is evidence that a debtor incurred a debt by making a misrepresentation of his financial condition in writing, the debt is nondischargeable under § 523(a)(2)(B). *See* 11 U.S.C. § 523(a)(2)(B); *Armbrustmacher v. Redburn (In re Redburn)*, 202 B.R. 917, 923-24 (W.D. Mich. 1996). A debt is nondischargeable under § 523(a)(2)(B) where it is procured by the use of a writing:

> (i) that is materially false;

4

> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit, reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

In its thoroughly reasoned opinion, the bankruptcy court identified and analyzed six separate factors under this statute.  (Trial Tr. 115-16).  The bankruptcy court also discussed four different cases that analyzed § 523(a)(2)(B): *BancBoston Mort. Corp. v Ledford (In re Ledford)*, 970 F.2d 1556 (6th Cir. 1992); *Bank One, Lexington, N.A. v. Woolum (In re Woolum)*, 979 F.2d 71, 75 (6th Cir. 1992); *Bomis v. Nat. Union Fire Ins. Co.*, 25 F.3d 1047, No. 93-1014 (6th Cir. May 23, 1994), and *Buckeye Retirement Co., LLC, Ltd. v. Kakde (In re Kakde)*, 382 B.R. 411 (Bkrtcy. S.D. Oh. 2008).  (Trial Tr. 118-23).  Finally, the bankruptcy court found that Clarkston had satisfied each element under § 523(a)(2)(B) by a preponderance of the evidence.  (Trial Tr. 123).

Debtor argued at trial, and argues again here, that Clarkston's reliance on his written statements was not "reasonable" because of obvious "red flags" indicating that Debtor was attempting to deceive Clarkston.  "Whether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances."  *In re Ledford*, 970 F.2d at 1560.  The circumstances considered include:

> (1) whether the creditor had a close relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations

5

> relied upon were not accurate; and (5) whether even minimal
> investigation would have revealed the inaccuracy of the debtor's
> representations.

*Id.*   "As a factual determination, this finding must be reviewed under the deferential clearly

erroneous standard." *In re Woolum*, 979 F.2d at 75. Debtor points to several different factual

issues that he asserts constituted "red flags."

### 1. Merrill Lynch printouts

In its discussion of Clarkston's reasonable reliance, the bankruptcy court noted that

"there's really only arguably one red flag or series of red flags, and these are . . . the Merrill

Lynch computer screen printout of account balances of various dates from early 2005 to mid-

2007." (Trial Tr. 124). The bankruptcy court concluded that these "red flags" were not

sufficient to put Clarkston on notice of Debtor's misrepresentation for two reasons:

> First, it appears to the Court that it's quite reasonable to conclude
> from the layout of this presentation that these account names that I
> just placed into the record are some kind of a shorthand
> designation for the account rather than a statement of precise legal
> ownership of the account. . . . And the second reason is there's
> really no other documentation or basis on which the bank could
> have decided that a further investigation was necessary. In the
> context of this commercial loan, although at least early on Dr.
> Oster was a new client of the bank, he was, nevertheless, an
> established and successful member of the business community in
> which the Clarkston bank served, and they trusted and believed his
> representations in the financial statements and in the loan
> agreements, so on balance the Court finds that there's nothing to
> suggest that the bank acted in bad faith here and nothing to suggest
> that its reliance was so unreasonable as to defeat a finding of
> reliance in fact.

(Trial Tr. 125-26).

Debtor argues that the bankruptcy court ignored the full statements for the Merrill Lynch

accounts, which reveal that the exact ownership of the accounts was questionable. However,

counsel for Debtor conceded at oral argument on February 1, 2011, that the full account statements were not introduced into evidence at the bankruptcy proceeding. Therefore, the bankruptcy court's failure to take the full account statements into consideration cannot be clearly erroneous.

### 2. Business loan agreement

Debtor next argues that the bankruptcy court erred by relying, in part, on the "affirmative covenants" in the business loan agreements. (Appellant's Br. 5). Debtor argues that these cannot be considered "representations" that Debtor owned $4,000,000 in marketable securities. But even if the bankruptcy court clearly erred in finding the business loan agreements constituted a misrepresentation by Debtor, the bankruptcy court also relied on the misrepresentation in the financial statements that Debtor had an ownership interest in between $8 and $9,000,000 in marketable securities. Thus, Debtor's argument here is unavailing.

### 3. Evidence of intent

Debtor also argues that Clarkston failed to present any evidence of intent. "Fraudulent intent may be inferred by examining the Debtor's conduct to determine if he presented the Plaintiff with a picture of deceptive conduct, indicating an intent to deceive." *JGR Associates, LLC v. Brown (In re Brown)*, --- B.R. ----, 2011 WL 9153 *13 (Bkrtcy. E.D. Mich. 2011) (quoting *WebMD Practice Services, Inc. v. Sedlack (In re Sedlack)*, 327 B.R. 872, 887-88 (Bkrtcy. E.D. Tenn. 2005)). The bankruptcy court based its finding of fraudulent intent on the following:

> The debtor knew that the statement was false, knew that he did not solely own either by himself $4 million in marketable securities, as represented in the business loan agreements, and he also knew that he did not jointly own eight or $9 million in marketable securities,

7

> as represented in his financial statements submitted to the bank.
> And the court infers from that knowledge the debtor's intent to
> deceive the bank.

(Trial Tr. 126). As noted by the bankruptcy court, the evidence indicates that Debtor knew he

was submitting documents to Clarkston that misrepresented his individual net worth. Therefore,

the bankruptcy court's finding on this issue is not clearly erroneous.

### 4. Entireties property

Debtor argues that, because one of the financial statements reflected that the marketable

securities were held jointly by Debtor and his wife, Clarkston was "on notice" that the securities

could be entireties property. Mich. Comp. Laws § 557.151 states:

> All bonds, certificates of stock, mortgages, promissory notes,
> debentures, or other evidences of indebtedness hereafter made
> payable to persons who are husband and wife, or made payable to
> them as endorsees or assignees, or otherwise, shall be held by such
> husband and wife in joint tenancy unless otherwise therein
> expressly provided, . . . with full right of ownership by
> survivorship in case of the death of either.

If the securities were actually entireties property, they would have been exempt from execution

under a judgment entered only against Debtor. *See* Mich. Comp. Laws § 600.6023a.

The bankruptcy court found this argument unpersuasive for two reasons:

> The first is it's highly unlikely under Michigan law that this
> account is of the type which, under the statute on which the
> defendant relies, would be held entireties property. It's simply not
> specifically identified as such in the statute. But second and
> perhaps more importantly, in the Court's view, the argument is
> irrelevant. The issue is, based on the information before it, did the
> bank act reasonably in relying on these statements, and the Court
> must conclude for the reasons previously indicated that the bank
> did so rely and reasonably rely on the false statements[.]

(Trial Tr. 127).

8

Debtor argues that the bankruptcy court clearly erred in finding that it was not clear whether § 557.151 applied to the Merrill Lynch accounts.  However, Debtor does not cite any relevant case law that finds § 557.151 clearly applies to brokerage accounts.  An unpublished decision issued after Clarkston approved the loans at issue held that this statute does apply to brokerage accounts.  *Zavradinos v. JTRB, Inc.*, 2007 WL 2404612 (Mich. App. August 23, 2007), *cert denied*, 482 Mich. 858 (2008).  This opinion was not available to Clarkston, and other published decisions that were available make the applicability of § 557.151 unclear.  *See McMahon v. Holland*, 260 Mich. 246 (1932) (finding statute did not apply to a joint bank account); *Guldager v. U.S.*, 204 F.2d 487 (6th Cir. 1953) (finding statute did not apply to government bonds held jointly).

As the bankruptcy court noted, the issue is whether Clarkston reasonably relied on Debtor's representations that he possessed $8 million in marketable securities.  The bankruptcy court found that Clarkston did reasonably rely.  The Court finds no clear error in the bankruptcy court's discussion of § 557.151 applicability, or lack thereof, in this case.

### 5.  *Bolton affidavit*

Debtor argues that the bankruptcy court improperly relied on the deposition of Donald Bolton in finding "that the bank and its agents actually relied" on Debtor's financial statements.  (Trial Tr. 123).  Debtor states that the affidavit was unreliable because Bolton did not work at Clarkston until after the loans were made to Debtor, so Bolton must have lacked personal knowledge.

Despite Debtor's contention that he did not work for Clarkston when the loans at issue were serviced, Donald Bolton signed the September 24, 2006 loan agreement on Clarkston's

9

behalf.  (R. Ex. 15).  Moreover, there is other evidence in the record on which the bankruptcy court may have based its factual finding of reasonable reliance.  The bankruptcy court's opinion specifically noted that "[t]he . . . commercial loan approval documents in evidence, of which there are several, clearly identify [the marketable securities] as a major asset and establish a clear reliance on the weight of that asset in determining to grant the several loans at issue here."  (Trial Tr. 123).

Based on the totality of the evidence in the record, the Court does not find the bankruptcy court's finding of actual reliance to be clearly erroneous.

## B.  Evidentiary Issues

Debtor's final issue on appeal argues that the bankruptcy court erroneously allowed Clarkston to offer Debtor's deposition testimony at trial, even though Debtor was available for live testimony and did testify as part of his own proofs.  A trial court's decision on evidentiary matters is reviewed under an abuse of discretion standard.  *Trepel v. Roadway Exp., Inc.*, 194 F.3d 708 (6th Cir. 1999).  "An abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment[.]" *Id*.

Debtor asserts that his deposition testimony was hearsay under FRE 801, and that it was only admissible if Debtor was unavailable to testify at trial, pursuant to FRE 804(b)(1) and 804(a).  This argument might apply if Clarkston had sought to admit the deposition of an available non-party witness.  However, where the deposition of a party is offered into evidence by the party's opponent, it is admissible non-hearsay.  *See* Federal Rule of Evidence 801(d)(2)(A); *U.S. v. Vasilakos*, 508 F.3d 401, 407 (6th Cir. 2007) ("The deposition excerpts are not hearsay because each statement was offered and received only against the party who made

10

it.").  Accordingly, the bankruptcy court did not abuse its discretion in allowing Debtor's

deposition to be used at trial.

## IV.  CONCLUSION

For the reasons stated above, the Court will:

(1) **DENY** Debtor's Appeal, and

(2) **AFFIRM** the bankruptcy court's June 15, 2010, Order finding that the debt owed by

Debtor to Clarkston is nondischargeable under § 523(a)(2)(B).


**SO ORDERED.**


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 24, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
February 24, 2011.


S/Denise Goodine
Case Manager

11